Thank you, Your Honor. Good morning. My name is Pam Snyder Varnes. I am a lawyer with the State of Montana, and I'm representing Heather Smith. She is the appellant, obviously, and the defendant below. This case arises from a preliminary parole revocation hearing, not a final one. The fact that the hearing was preliminary, not final, matters. In Morrissey v. Brewer, the Supreme Court said, not all situations calling for procedural safeguards call for the same procedure. Preliminary and final parole revocation hearings are not the same in Montana. Heather Smith is entitled to qualified immunity because she didn't violate clearly established law with respect to Mr. Marble's right to procedural due process at his preliminary hearing back in September of 2011. But any discussion about qualified immunity only comes into play if the court determines Smith is not entitled to absolute quasi-judicial immunity, which she is. Smith was a senior parole officer, functioning as a hearing officer. She performed a function like that of a judge in a case that excited strong feelings because one of the litigants' liberty was at stake, Mr. Marble's. How is the decision not to notify witnesses of the time and date of a hearing the function of a judge? Well, even if you consider that preliminary to the hearing and ministerial conduct, Your Honor, Mr. Marble didn't suffer any harm as a result of that. Did any of those witnesses show up? No, Your Honor. Do you know whether they would have shown up if they'd known the time and date of the hearing? I really can't say, Your Honor. Then how can you be sure that there was no harm suffered? He didn't get it. Morrissey gives us a minimum. He's entitled to have a hearing. He's entitled to present his side in front of an uninvolved decision-maker. He didn't get to present his side because the people weren't there. He thought they were going to be there, but they weren't. So how can we be sure there was no harm suffered? Well, Your Honor, even Morrissey said that parole revocation proceedings are informal. This hearing was a probable cause hearing. What does formality have to do with it? Either the witnesses knew when they were supposed to come or they didn't, and if they didn't, the formality of the hearing really doesn't matter, does it? Well, Your Honor. And that's what I've honed in on, that the failure to give notice. I don't see that as a judicial function. So I have difficulty with your quasi-immunity argument, and it doesn't seem to me like a hard concept. If Morrissey says you're entitled to a hearing and the witnesses don't know where to go to for the hearing, isn't there a piece missing there? Two things. Mr. Marble was never prohibited or prevented from notifying his own witnesses, but you can call people from the jail. Secondly, with respect to your... You didn't have reason to expect that your clients, parole officers, probation officers, would give that notice because that's what the state regulation seems to say. Certainly, Your Honor, the state took on the obligation to assist the parolee with contacting witnesses if he was in custody. But the fact is, this was a probable cause hearing. If the hearing officer was able to find probable cause without the witnesses, which she did, based on unreliable documentary evidence... Oh, no, no. That means you only have to hear from the prosecutor's case. You only have to have enough, and the defendant doesn't have to be given a chance to speak. Morrissey tells us something different. Morrissey tells us that the person in this case, in Mr. Marble's situation, has a right to put his side of the story up, too. So the question isn't whether there's sufficient evidence. The question here is whether Mr. Marble's been given the opportunity that Morrissey tells him he's supposed to have. Well, Morrissey says that it's a narrow inquiry at a preliminary revocation hearing. It's a due process inquiry. And the process should be flexible enough to consider evidence including letters, affidavits, and other material. You're missing my point. I'm not contesting whether there was sufficient evidence. I'm saying Morrissey requires an opportunity to be heard. And in this case, Marble didn't have the opportunity to be heard because the witnesses didn't know where they were supposed to go. You can have all the evidence in the world that establishes from the probation office point of view, prosecution point of view, that he committed an offense and probation should be revoked. But that doesn't mean the defendant doesn't have a shot at his side of the case. And there's no sign here the defendant had the hearing that Morrissey says he's supposed to have. Is there? I would disagree respectfully, Your Honor. The police report that Ms. Smith relied upon was, and she relied upon it not really for the substance of the information in it, but simply for the fact that the officer who had interviewed both Mr. Marble and Ms. Dantigny. Well, the officer can't be the hearing officer, can he? Morrissey said it has to be somebody who was involved. So you're not offering the policeman as a substitute for the hearing officer, are you? No, I'm offering the policeman for the purpose of showing that he had decided, based upon what he had learned about the situation, to charge Mr. Marble with two misdemeanor offenses. That was probable cause that Mr. Marble had violated a parole condition, which was, I shall comply with all Federal, State, and local laws. The last time I'll pose it, but it seems to me you're not answering the right question. You're answering the question of whether there was probable cause. I'm not asking that question. I'll concede there was probable cause. I'm asking the question, how has Marble's rights under Morrissey been satisfied here if there isn't a hearing where he has an opportunity to present his side of the case? He might well have lost, no question about it. But Morrissey says you've got an opportunity for a hearing, and that seems to be a due process violation separate and apart from the question of whether probation was properly revoked. So, like last time, but it seems to me you're not answering the question I'm trying to pose, which leads me to infer there's not an answer to the question I'm trying to impose. Well, Your Honor, I would say that I agree. Obviously, the issue is whether Mr. Marble received due process at this preliminary, informal hearing at which the rules of evidence do not apply. The hearing officer relied on reliable hearsay evidence. Was there a hearing at all? There was, Your Honor. There is quite an extensive summary of the hearing. Well, but a hearing, I mean, where witnesses gave testimony. Did that happen? Well, Your Honor, Mr. Marble did testify, and he did tell Ms. Smith another version of the story. And following up, don't you have a more difficult problem even with regard to the adverse witness, Ms. Dantigny? Wouldn't there have to be some good cause determination before her presence could be excused? Well, Your Honor, under U.S. v. Simmons and U.S. v. Walker, this circuit has found that the reliability of documentary evidence can constitute good cause. I'm talking about Morrissey, though. Didn't the hearing officer, wasn't the hearing officer required to do a good cause balancing test? Well, that's the whole issue, Your Honor, with respect to clearly established law. Smith concedes that under Valdivia, the necessity to engage in comito balancing attaches at final revocation hearings. But there is no law that says that it does at preliminary hearings. And, in fact, the district court below, in talking about clearly established law, defined it at too general a level by saying that, by citing Valdivia for the fact that comito balancing must be conducted at final revocation hearings. He went on to say, and Smith didn't put on any or show any authority to the effect that this does not apply equally to preliminary hearings. And he did that in error because the burden was on Mr. Marble to show that the law was clearly established. There is no law out there saying that comito balancing is required in preliminary revocation hearings. Do you want to save the rest of your time? I would, please. Thank you. Good morning, Your Honors, and may it please the Court. My name is Hania Adanko on behalf of Appellee Cody Marble. My co-counsel, Justin Hanusab, and I are law students at the University of California Irvine School of Law Appellate Litigation Clinic, working under the supervision of Paul Hoffman. I will argue that the district court correctly held that Appellant Smith is not entitled to absolute immunity for administrative tasks unrelated to her role as a hearing officer and that she's not entitled to an adequate post-deprivation remedy defense because the facts of this case fall squarely within the Zunerman exception to the Peratt-Hudson Doctrine. My co-counsel will argue that she's not entitled to qualified immunity, and we plan to split our time equally. Because Mr. Marble was an incarcerated parolee, Marble's parole officer, Poole, was tasked with contacting witnesses on his behalf and informing them that their presence was required at his preliminary revocation hearing. Appellant Smith, Marble's hearing officer, undertook to perform this task on Marble's parole officer's behalf and then failed to discharge her obligation, resulting in five months of his incarceration. This court should affirm the district court's opinion for the following reasons. First, the challenge conducted issue is Smith's failure to discharge her duty to procure Marble's witnesses, not her adjudication of his case. Well, she didn't have a duty to secure the witnesses. The witnesses weren't obligated to come, were they? No, Your Honor, but she had a duty to contact the witnesses, and the district court found that her efforts to do so were insufficient and that a reasonable jury could conclude that Marble's rights were violated by her failure to procure these witnesses. The district court correctly held that Smith's title as a hearing officer is non-dispositive. She can only enjoy absolute immunity if this discrete role is functionally comparable to that of a judge. Smith is not entitled to absolute immunity for conduct arising from her duty to supervise parolees. Well, at least as to the victim, whose name was Dantigny or anyway, I'll just say the victim, wouldn't it be appropriate for a hearings officer to say, look, she's suffered enough, she doesn't want to be in proximity with the person that she is afraid of, and so I wouldn't enforce a subpoena, I'm not going to press the issue on her. Your Honor, my co-counsel will address this issue further, but it is our position that even if that were true, none of that occurred in this case. There were no findings made, and she didn't make any factual determinations either to any good cause balancing. Well, no findings, but that strikes me as the kind of judgment a judge would make. So why isn't that something that she would be, it's not purely administrative at that level, why wouldn't she be eligible for judicial immunity for that decision? We argue that this is a non-judicial task because Montana delegates it to the parole officer at the first instance. So as a hearing officer, she would not even be entrusted with this role, it would be the parole officer's role. Well, she'd be the one to decide whether, for example, if a subpoena had been issued, she'd be the one to decide whether to issue the subpoena or whether to issue the subpoena. The record is silent as to whether or not she would be the person to issue the subpoena. According to the Montana law, it seems that the parole officer would be the person in charge of contacting these witnesses. But you just told me that she was performing the function of the parole officer. Yes, Your Honor. So it would be her, wouldn't it? Yes, but the decision of whether or not to issue a subpoena wouldn't be judicial, Your Honor. It's similar to the functions that parole officers perform. But enforcement of it would be. I mean, suppose the subpoenas aren't self-enforcing. So people frequently don't show up. And then the judge has to decide what, if anything, to do about it. Or the judge may, in a larger context, this is more informal, a judge would be the one to decide whether to enforce a subpoena or whether to grant a motion to quash it. And if I'm representing the victim, I say she doesn't want to be there, that's the kind of question that would be put in front of a judge. Yes, Your Honor. But that didn't happen in this case. The only efforts that she made in this case were to call her. Whether or not she would be entitled to quasi-judicial immunity if a subpoena had issued and there was an issue of enforcement is different because she didn't perform any of the duties that she was entrusted with. This case is similar to Swift where this court held that parole officers, when they investigate parole violations, execute parole holds, authorize arrests, recommend the initiation of parole proceedings, are not entitled to absolute immunity. Moreover, the district court correctly denied Smith's adequate post-deprivation remedy defense because as a threshold matter, Mr. Marble wasn't granted an adequate remedy. He was granted the right to which he was entitled in the first place. And this case fits squarely within the Zimmerman exception to the Peratt-Hudson doctrine. In Zimmerman, this court held that where the violation is predictable, where pre-deprivation process is possible when the conduct is not unauthorized, adequate post-deprivation remedy is insufficient to cure a deprivation, a due process deprivation. This case rehashes issues that were disposed of in Zimmerman because the facts of this case clearly mirror that case. Here, the conduct was not unpredictable. It occurs at a specific point in the process, which is when she failed to contact his witnesses. Pre-deprivation process is not impossible because the preliminary hearing, like the pre-seizure hearing in Zimmerman, is exactly the kind of process that's designed to protect the parolee's rights. And finally, the conduct is not unauthorized. We ask that this court affirm the order of the district court. Thank you. If you could freeze the clock. Thank you. Good morning, Your Honors. My name is Justin Hanisov on behalf of Cody Marble. Morrissey v. Brewer and its progeny make clear that a person faced with parole revocation is entitled to present witnesses in his defense and to cross-examine adverse witnesses. As the district court found, Defendant Smith should not be afforded qualified immunity because she intentionally deprived Mr. Marble of these fundamental due process rights. The circuit has repeatedly affirmed the basic principles of Morrissey, and Montana lawmakers specifically implemented Morrissey by creating the state rules and regulations that Defendant Smith ignored in this case. Officer Smith was plainly on notice of these rights when she violated them, and because of her violations, Mr. Marble spent five months in jail. So you're saying that the clearly established law in this case is the Montana law and regulations. Is that right? Not exactly, Your Honor. The clearly established law in this case is Morrissey v. Brewer. However, the state law reinforces and reflects the requirements of Morrissey and implements them in the state procedures and the parole procedures as well. The reason I ask is because the Supreme Court has hit this court over the head and other courts over the head with that qualified immunity mallet, and it just recently did so in that case of White v. Party, which we asked the parties to brief. So the Supreme Court keeps reminding us not to look at a generality. It has to be specific, as you know. I haven't read your guys' brief on this. So can you articulate to us just White v. Party, that's ringing in my ears at least, why under White v. Party should qualified immunity be denied? Yes, Your Honor. Well, White v. Party did not change the standard for qualified immunity. It merely reiterated the longstanding principle that qualified immunity should not be established at a general level but particularized to the facts of the case. Also, White concerned the difficult line between excessive and reasonable force, and the law was not clearly established in that case because the petitioner relied on cases that the Supreme Court had previously acknowledged only lay out general principles of excessive force, which are insufficient for clearly established law. In contrast, this case lays out clear and explicit due process principles, which every officer in Smith's position is obliged to follow. Decades of case law and Montana's rules and regulations make it clear that Mr. Marble was entitled to have witnesses at his hearing and to cross-examine his accusers. These are not general principles. Was he denied the opportunity to cross-examine whoever was there? No, Your Honor. Can you point me to anything that says specifically that the State is obligated to make sure the witnesses do appear? Well, yes, Your Honor. State law requires that if a parolee is being detained pending the hearing, that the parole officer shall contact the witnesses. That's one step short. That may have to do with contact. Does it say anything about the State is obligated to make the witnesses appear? Regarding adverse witnesses, yes, Your Honor. Any witnesses? Regarding adverse witnesses, they are required to make the witnesses available at the hearing. They are even given subpoena power by the State to do so. Regarding the evidentiary witnesses, the officer's responsibility is limited to notifying them at the time and the place of the hearing, which Officer Smith did not do in this case. For two of the witnesses, she attempted to call and spoke to one of them and did not notify them of the time and place of the hearing or that their presence was necessary. The only eyewitness to dispute it out when the dispute ends. I know the facts. Let me focus in the few seconds you have left on the law. You've cited the Montana regulations. First, is there any case law precedent that supports the notion that these State regulations have themselves become incorporated within the requirements of due process? Yes, Your Honor. Well, this Court held in Drummond v. City of Anaheim that State law regulations and training may be relevant to whether defendants have been provided with adequate notice of their constitutional obligations. The standard operating procedures even cites morse as a source of authority, so there's no doubt of what an officer must do or where it's coming from to ensure that these procedures are met. Is there any authority that speaks to a State that doesn't have this kind of regulation that says the due process requires notification of time and place to the witnesses? Does your case hang on acceptance of the regulations as part of the due process requirement? I'm not aware of any case authority that says that. So it seems to me that your case does hang on the acceptance of Montana regulations as part of due process requirement. Well, Your Honor, our State relies... Morrissey v. Brewer is enough to clearly establish the law for this case. The Montana State law is offered merely as a way to reinforce and reflect those principles and show that Officer Smith was on notice of that. Why don't you go ahead and wrap it up? Yes, Your Honor. Plaintiff's petitioner's argument essentially means that a mere allegation would be enough to send someone back to jail, and every reasonable officer would know that that has never been the law in this country. This court should affirm the district court and deny petitioner qualified immunity. Thank you. Thank you, counsel. If we could go ahead and give her two minutes. Thank you, Your Honor. And I would follow up on what Judge... Don't trust me. Well, in answering the question from the court as to whether State law can form the basis of clearly established law, it's clear that it cannot in this case because in order to do that, the statutes or regulations have to include substantive predicates that pretty much dictate an outcome if they're met. Here, these statutes and administrative rules pretty much mirror Morrisey. They're procedural. They're not substantive. If they're followed, they don't say you must find probable cause. So they don't meet the standards. Well, they do lay out some pretty clear guidance for the parole officers as to what they're supposed to do. Procedurally, Your Honor, yes, but not substantively. So why is the parole officer in the dark if, in fact, you've got Morrisey and the other decisions that set the general standard, and you've got these regulations aimed at implementing it, how is it the parole officer is legitimately ignorant? I mean, qualified immunity is all about what the officer should fairly understand, and if the regulation says do X, what's not to understand about doing X? Her role, Your Honor, was judicial, and it was to find probable cause, and she found it. But she took on the responsibility of Officer Poole. I mean, Poole's role was to contact the witnesses and let them know, but Poole didn't do that. Smith did. So I understand that she had a hearing officer capacity, but she also seemed to be doing Poole's job, and that job didn't get done. Unfortunately, there's unsightable authority in the circuit, a 2005 case, in which pre-hearing conduct by a hearing officer was thrown into the mix. It was considered part of her role in conducting that hearing, and she was given absolute immunity. You can construe it either as adjudicative part of her role as the hearing officer, or you can construe it as pre-hearing ministerial conduct. It really doesn't matter because causation cannot be established. Thank you very much, counsel. This matter is submitted. Thank you, both sides, for your arguments. Good job on both sides.
judges: Clifton, Owens, Antoon